```
          THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

                              CENTRAL DIVISION
```

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| TELECOM ITALIA S.p.A, | ) | Case No. 2:03CV00641 DS |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM OPINION AND ORDER |
| L-3 COMMUNICATIONS CORP., ET AL., | ) | |
| Defendants. | ) | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## I.  INTRODUCTION

Pending before the court are cross motions for summary judgement. Plaintiff Telecom Italia S.p.A. ("Telecom Italia") by its motion seeks judgment in its favor as to its First Claim for Relief for breach of contract. Defendants L-3 Communications Corporation and L-3 Communications Systems-West (collectively "L-3") seek the Court's judgment in its their favor as to both Plaintiff's breach of contract claim and Plaintiff's Second Claim for Relief for unjust enrichment.

The material facts and allegations are as follows. L-3 contracted with the United States government to provide certain communication services in Italy. In July of 1999, L-3 and Columbia Communications Corporation ("CCC") entered into a contract (the "CCC Contract") for the lease of satellite services. On or about September 30, 1999, the CCC Contract was amended (the "Amended CCC

Contract") to provide that the payments owing thereunder were to be paid half by L-3 and half by Telecom Italia.  The Amended CCC Contract provides that L-3 and Telecom Italia were to pay CCC in advance and that all payments were to be invoiced "in advance of each payment due date".  On or about September 30, 1999, Telecom Italia submitted an offer (the "Offer") to L-3 to provide satellite link and special operation/maintenance to L-3, which L-3 accepted by issuing a purchase order (the "Purchase Order")(collectively the "Service Agreement") to Telecom Italia on September 30, 1999.

In a memorandum dated January 27, 2000, CCC notified Telecom Italia that payments were past due.  On April 11, 2000, CCC notified L-3 that Telecom Italia was significantly behind in its payments and that unless payment was received immediately, satellite service would be terminated.  CCC requested that L-3 pay Columbia directly.  On April 13, 2000, L-3 issued a new purchase order to Telecom Italia stating the change order reduces the monthly payment to Telecom Italia to $3300.00 because Telecom Italia was delinquent in its payments to CCC.  A similar purchase order was issued to CCC on the same date.  Telecom Italia subsequently sent L-3 six invoices, each for two months of service and each dated October 11, 2000 claiming what appears to be a total debt of 137,254.656 Euros.  L-3 paid Telecom Italia the sum of $39,600 on or about July 13, 2001.

L-3 asserts that the Amended CCC Contract was undertaken in conjunction with the Service Agreement whereby Telecom Italia agreed to act as L-3's agent to CCC. Telecom Italia denies that it was ever a party to either the CCC Contract or the Amended CCC Contract, or that the Service Agreement was undertaken in conjunction with the Amended CCC Contract.

## II.  SUMMARY JUDGEMENT STANDARD

Under Fed. R. Civ. P. 56, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party.[1]  *E.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). This burden has two distinct components:  an initial burden of production on the moving party, which burden when satisfied shifts to the nonmoving party, and an ultimate burden of persuasion, which always remains on the moving party.  *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 (2d ed. 1983).

---

[1] Whether a fact is material is determined by looking to relevant substantive law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id.  If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law.  *Celotex*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202.

### III.  DISCUSSION

Telecom Italia's position is that L-3 has breached the Service Agreement by which L-3 agreed to make twelve consecutive monthly payments to it in the amount of $30,800.00 each and that $330,000.00 remains due and owing.  In support of its position, Telecom Italia urges that the Service Agreement unambiguously required L-3 to make twelve equal payments to it and that there is no requirement, either express or implied, that it invoice L-3 or pay CCC as a condition to receiving those monthly payments from L-3.

On the other hand, L-3's position is that the Service Agreement between it and Telecom Italia required Telecom Italia to act as L-3's agent or intermediary, as L-3 believed Italian law required, and to pay a portion of the amount owing CCC under the Amended CCC Contract, and to invoice L-3 for those amounts, plus a

$3,300.00 agent's commission. L-3 further asserts that because Telecom Italia breached the Service Agreement by failing to make timely payments to CCC, L-3 was excused from further performance and Telecom Italia cannot recover for any alleged breach of the Service Agreement by L-3.

The rules of contract interpretation are well-settled and have been summarized as follows.

> The underlying purpose in construing or interpreting a contract is to ascertain the intentions of the parties to the contract. ...
> In interpreting a contract, "'[w]e look to the writing itself to ascertain the parties' intentions, and we consider each contract provision ... in relation to all of the others, with a view toward giving effect to all and ignoring none.'" ...
> "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." ... However, if the language of the contract is ambiguous such that the intentions of the parties cannot be determined by the plain language of the agreement, "extrinsic evidence must be looked to in order to determine the intentions of the parties." ... If a contract is ambiguous, the court may consider the parties' actions and performance as evidence of the parties' true intention. ...
> An ambiguity exists in a contract term or provision "if it is capable or more than one reasonable interpretation because of 'uncertain meanings of terms, missing terms, or other facial deficiencies.'" ...
>     ...
> "Whether an ambiguity exists in a contract is a question of law." ... "When ambiguity exists, the intent of the parties becomes a question of fact." ... "[A] motion for summary judgment may not be granted if a legal conclusion is reached that an ambiguity exists in the contract and there is a factual issue as to what the parties intended." ...

*Webbank v. American General Annuity Service Corp.*, 54 P.3d 1139, 1144-1145 (Utah 2002)(citations omitted).  Having carefully examined the Offer and the Purchase Order the Court concludes that the resulting Service Agreement between Telecom Italia and L-3 is ambiguous.  Telecom Italia's Offer to L-3 states in part:

> ... we send you our Pricing to provide the service on the Italian side, using the equipment owned by [the] U.S. Army.  The Service in Italy will be managed by Telecom Italia who will handle the station operation and the space segment.
> ...
> In the event that the U.S. Army earth terminal is deployed from Italy to another country, due [to] the military necessity any contract resulting from this offer will become null and void up[on] such deployment. **In this case Telecom Italia will cease to pay Columbia Communications Corp. for the space segment and L-3 Communication['s] obligation to pay Telecom Italia will also cease. The lease** of the 18 MHZ bandwidth on transponder 4 **will then be imm3ediately [sic] assumed by L-3 Communications, along [with] the obligation to pay Columbia Communications Corp. for this lease.**

*See* Pl.[s] Mem. Support, Ex. C (emphasis added).[2]  In view of the foregoing reference in the Offer to payments by Telecom Italia to CCC, the absence of any language in either the Offer or the Purchase Order addressing any such obligation on the part of

---

[2]The Court notes with interest the inclusion of the following similar language in the Amended CCC Contract:

> In the event that the U.S. Army deploys its earth terminal to another country Columbia Communication shall terminate Telecom Italia's lease and reassign the 18 MHZ of bandwidth back to L-3 Communications.  With reassignment L-3 Communications will assume the obligation to pay the full Fifty-Five Thousand ($55,000.00) per month lease payment.

Telecom Italia appears to create an ambiguity as to the parties' intentions as to any such payments.[3]  For purposes of the present motions the Court so concludes.

The Court, therefore, looks to extrinsic evidence to determine the intent of the parties. *See Webbank*, 54 P.3d at 1144-45. The Amended CCC Contract on its face provides that L-3 and Telecom Italia each will pay one-half of the $55,000 month fee ($27,500) to CCC. L-3's Lynn Gee declares that Telecom Italia pursuant to the Amended CCC Contract agreed to act as L-3's intermediary with CCC, whereby Telecom Italia pursuant to the Amended CCC Contract was to pay CCC the sum of $27,500 per month for use of CCC's satellite, and then invoice L-3 the sum of $30,800 per month to cover the payment to CCC, plus an additional $3,300 ($27,500 + $3,300 = $30,800) to Telecom Italia for its administrative services. As further evidence of the parties intent, L-3 points to Telecom Italia's failure to repudiate or to object to its alleged obligation to pay CCC in subsequent correspondence to it from both CCC and L-3. Lynn Gee further

---

[3] L-3 urges that the Service Agreement is not ambiguous, but simply incomplete as to all its terms, and that parol evidence is admissible to establish the alleged additional terms of Telecom Italia's obligation to pay CCC $27,500 per month and to invoice L-3 for those payments. Due to the Court's determination that material issues of disputed fact are present, it appears to the Court to make little difference for purposes of the present motions, whether the Service Agreement is characterized as incomplete or ambiguous.

declares that the Service Agreement was executed pursuant to negotiations with CCC over the Amended CCC Contract.

Telecom Italia denies that it was ever a party to the Amended CCC Contract or that it is bound by the terms or conditions of that contract.  It points specifically to the Amended CCC Contract which provides that L-3 shall not assign any of its obligations without CCC's written consent, and if consent is given, "the prospective assignee shall first agree in writing to comply with all of the terms of this Agreement."  Telecom Italia  asserts that there is no evidence that it agreed in writing to comply with the terms of the Amended CCC Contract.  Telecom Italia also submits the Declaration of Francesco D'Angelo, whom it represents was the executive responsible for administration of the Service Agreement between L-3 and Telecom Italia.  Mr. D'Angelo denies any knowledge of any contract between L-3 and the United States or any contract flowing therefrom, which appears to encompass both the CCC Contract and the Amended CCC Contract.  Mr D'Angelo also denies any contractual commitment to send invoices to L-3.

Because the Service Agreement is found to be ambiguous for purposes of the present motions, and because there are factual disputes as to what the parties intended when they entered into the Service Agreement, as noted above, summary judgment may not be

8

granted to either L-3 or Telecom Italia as to Telecom Italia's breach of contract claim.  Similarly, L-3's motion directed at Telecom Italia's claim for unjust enrichment,  premised on the terms of the Service Agreement, also fails because of disputed issues of fact as to what the parties intended when they entered into the Service Agreement.

## IV.  CONCLUSION

For the reasons stated, the Motions for Summary Judgment of both Telecom Italia and L-3 are **DENIED**.

**IT IS SO ORDERED**.

DATED this 17th day of August, 2005.

                              BY THE COURT:


                              _____
                              DAVID SAM
                              SENIOR JUDGE
                              UNITED STATES DISTRICT COURT