THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

TELECOM ITALIA S.p.A,            )     Case No. 2:03CV00641 DS

           Plaintiff,        )

       vs.                      )     FINDINGS OF FACT AND
                                CONCLUSIONS OF LAW
L-3 COMMUNICATIONS CORP.,
ET AL.,                          )

          Defendants.       )

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**INTRODUCTION**

This matter was tried to the Court on November 27, 2006.[1]
Donald J. Winder, Esq., and Marshall Blake Hill, Esq., appeared
as counsel for Plaintiff Telecom Italia S.p.A. ("Telecom
Italia").  No party representative of Plaintiff was present.
Robert Mansfield, Esq., appeared for Defendants L-3
Communications Corporation and L-3 Communications Systems-West
(collectively "L-3"), who were represented by party
representative Steve Korell.  Lynn Gee of L-3 was also present.

The Court having considered the testimony and exhibits
presented at trial, the post-trial memoranda, and all other
relevant matters of record, enters its findings of fact and

---

[1]The final post-trial pleading was filed on January 25,
2007.

1

conclusions of law pursuant to Fed. R. Civ. P. 52.[2]

## FINDINGS OF FACT

1.   In 1999, L-3 contracted with the United States (the U.S. Contract") to provide certain satellite communication services between U.S. bases in Germany and Italy.

2.   In July of 1999, L-3 contracted with Columbia Communications Corporation ("CCC") for the lease of satellite services (the "Transponder Lease Agreement") in order to satisfy requirements of the U.S. Contract.

3.   In September of 1999, the Transponder Lease Agreement was amended (the "Amended Transponder Lease Agreement").

4.   The Amended Transponder Lease Agreement stated for the period October 21, 1999 through October 20, 2000, the services described therein "shall be priced at Fifty-Five Thousand Dollars ($55,000.00) per month" and that amount shall be  "split equally between L-3 Communications and Telecom Italia".

5.   The Amended Transponder Lease Agreement provided that

---

[2]Any finding of fact more properly deemed a conclusion of law, or any conclusion of law more properly deemed a finding of fact, shall be as more properly characterized.

L-3 and Telecom Italia were each to pay CCC in advance.

6.   To fulfill the U.S. Contract, L-3 was informed that Italian law required L-3 to contract with an Italian company to provide telecommunications "landing" services.

7.   On September 13, 1999, L-3 requested that Telecom Italia provide a pricing quote for Telecom Italia to act as the "landing services" agent in Italy.

8.   At or about this time, L-3 sent to Telecom Italia the Transponder Lease Agreement and the Amended Transponder Lease Agreement.

9.   On September 30, 1999, Telecom Italia submitted Offer No. 35525 (the "Offer") to L-3 to provide satellite link and special operation/maintenance to L-3 for the amount of $30,800.00 per month for a period of one year.

10.   The $30,800.00 monthly payment was comprised of a $3,300.00 landing fee to be paid Telecom Italia and reimbursement of $27,500.00, which was to be passed through Telecom Italia to CCC.

11.  L-3 accepted the Offer by issuing Purchase Order No. 909218S, dated October 16, 1999 and signed by Lynn Gee.

12.  The Offer and Purchase Order No. 909218S together comprise the "Service Agreement" between L-3 and Telecom Italia.

13.  The Transponder Lease Agreement and the Amended Transponder Lease Agreement were made part of Purchase Order No. 909218S.

14.  Purchase Order No. 909218S sent to Telecom Italia included the terms and conditions included in Defendants' Exhibit 4.

15.  Clause B-4 of the Terms and Conditions of the Service Agreement provide that "Buyer [L-3] shall pay Seller [Telecom Italia] upon the submission of proper invoices or vouchers ...."

16.  Purchase Order No. 909218S states:

             SEND ALL INVOICES TO:

                    L-3 COMMUNICATIONS
                    ATTN: ACCOUNTS PAYABLE
                    640 NORTH 2200 WEST
                    P.O. BOX 16850
                    SALT LAKE CITY, UT   84116-0850

17.   The Court previously ruled in this case that the
written documents comprising the Service Agreement were ambiguous
and that extrinsic evidence was necessary in order to complete
the agreement and determine the intentions of the parties.

18.   The only witness to testify at trial for either side
was L-3's Lynn Gee who during the relevant time period was L-3's
Subcontracts Manager with responsibility for the Transponder
Lease Agreement, the Amended Transponder Agreement, and the
Service Agreement.

19.   Lynn Gee testified that Telecom Italia had only two
obligations under the Service Agreement.  The first was to pay
CCC the sum of $27,500.00 per month, beginning on October 21,
1999 and continuing for a period of 12 months.  The second
obligation of Telecom Italia under the Service Agreement was to
invoice L-3 the sum of $30,800.00 subsequent to making the
$27,500.00 payment to CCC.

20.   Lynn Gee testified that L-3's obligation to pay Telecom
Italia the sum of $30,800.00 per month arose only after receiving
the invoice from Telecom Italia.

21.   Lynn Gee testified that he explained to Mr. Gannaro

Bauduin of Telecom Italia the necessity of invoicing L-3 in a prompt manner and that L-3 could make no payment to Telecom Italia until it received an invoice from Telecom Italia evidencing a payment to CCC.

22.  Lynn Gee testified that he explained to Mr. Bauduin that prompt invoicing was necessary because L-3 had a limited amount of time in which it could seek reimbursement under the U.S. Contract.

23.  Under the Service Agreement, Telecom Italia first was to pay CCC the monthly fee of $27,500 for the use of CCC's satellite, and then to invoice L-3 for the amount paid to CCC, plus Telecom Italia's landing service fee of $3,300.00, for a total of $30,800.00.

24.  Timely and prompt submission of an invoice to L-3 from Telecom Italia, prior to L-3 paying any sums of money to Telecom Italia, was a material term of the Service Agreement.

25.  Upon receipt by L-3 of an invoice from Telecom Italia, L-3 was to pay the invoice, and in turn, bill and receive payment from the United States.

26.   Under the terms of the U.S. Contract, L-3 could invoice the government and receive payment only after L-3 had been invoiced and paid for the services provided.

27.   CCC sent Telecom Italia a letter dated January 27, 2000 regarding its "severely delinquent" account.

28.   On March 30, 2000, L-3 received a telephone call from CCC complaining that Telecom Italia had not made the required payments.

29.   On March 31, 2000, L-3 sent an email to Telecom Italia requesting that it make the required payments.  In addition, L-3 requested that Telecom Italia send it an invoice so that L-3 could make payment to Telecom Italia.

30.   L-3 received no response from Telecom Italia to its March 31, 2000 email.

31.   L-3 received a fax from CCC dated April 11, 2000, which states in part that "[d]espite [CCC's] best efforts to facilitate payments, over the past few months Telecom Italia has fallen significantly in arrears with respect to payments due to Columbia" and that "[i]f payment is not received promptly,

7

Columbia will proceed to exercise its rights to suspend or
terminate Service under the Agreement".  The fax also states
"Based upon the attached invoice, the total amount currently owed
to Columbia [from Telecom Italia] is $142,090.68."  Lynn Gee
testified that he did not know if the April 11, 2000 invoice from
CCC was attached to the fax he received.

32.  On April 12, 2000, L-3's Lynn Gee telephoned Telecom
Italia to inquire whether Telecom Italia would make the required
payments.  Mr. Gee only received voice mail and left messages
detailing the reason for the call and requesting a return call.
L-3 received no response to Mr. Gee's  call.

33.  On April 13, 2000, L-3 issued and delivered Purchase
Order 909218S  to Telecom Italia which provides: "THIS CHANGE
ORDER REDUCES THE MONTHLY PAYMENT TO TELECOM ITALIA TO $3300.00.
...  L-3 COMMUNICATIONS WILL PAY COLUMBIA COMMUNICATIONS
DIRECTLY.  TELECOM ITALIA'S P.O. IS BEING REDUCED BECAUSE THEY
ARE IN DELIQUENT [sic] TO COLUMBIA COMMUNICATION".

34.  A similar purchase order, No. 900099S, was issued to
CCC on the same date and provides: "ITEM 003 IS ADDED TO PROVIDE
A VEHICLE TO PAY COLUMBIA COMMUNICATIONS FOR THE WHOLE
TRANSPONDER COST BECAUSE TELECOM ITALIA HAS NOT MADE ANY PAYMENTS

TO COLUMBIA COMMUNICATIONS."

35.  CCC sent to L-3 seven invoices for the amounts due to CCC under the Amended Transponder Lease Agreement.  The invoices range in date from October 1, 1999 to September 6, 2000.

36.  The May 2, 2000 invoice from CCC to L-3 reflects a payment from Telecom Italia to Columbia of $110,000.00 for the four months of "January-April 2000 @ $27,500."  The invoice is addressed to L-3 Communications, Attn: Emily Boykins, Accounts Payable.  The invoice also states "cc: Lynn Gee/L-3 Communications".

37.  Lynn Gee testified that he had no knowledge of any payments made by Telecom Italia to CCC and that he does not see invoices unless there is a specific issue that he must address.

38.  On November 12, 2000, Telecom Italia allegedly sent six invoices to:

        LTR COMMUNICATIONS SYSTEMS WEST - C.
        A. MR. LYNN D. GEE
        NORTH ROAD - P.O. BOX 16050 - 8411
        6-0850640
        SALT LAKE CITY UT

The invoices, which each bear the dates "10/11/00" and "11/12/00" claim a total amount owing of 137,254.656 Euros.

9

39.   L-3 did not receive Telecom Italia's invoices until May 23, 2003, when counsel for Telecom Italia sent them to L-3 demanding payment.

40.   On July 13, 2001, L-3 paid Telecom Italia the sum of $39,600.00, which represented Telecom Italia's landing service fee of $3,300.00 per month for twelve months.

41.   On August 25, 2003, Lynn Gee received an email from CCC stating that Telecom Italia had made payments to CCC of $37,258.06 on February 29, 2000, $110,000.00 on April 28, 2000, and $7,108.15 on June 30, 2000.

42.   Lynn Gee testified that when he finally learned that Telecom Italia had paid CCC it was too late for L-3 to be paid by the United States for that amount under the U.S. Contract.

43.   Although L-3 may not have been required to make the total payments to Columbia due to the eventual payment by Telecom Italia, L-3 also received no remuneration for payments not made by L-3 to CCC.

10

### CONCLUSIONS OF LAW

1.   The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332.  The Court also has Personal jurisdiction over the parties.  Venue is proper in this district.


2.   L-3 and Telecom Italia agreed that the Service Agreement would "be construed in accordance with and governed by the laws of the State of Utah."


### Miscellaneous Motions

3.   L-3's Motion for Default Judgment **(Doc. #98)** is denied. L-3 has failed to demonstrate how it was prejudiced by Telecom Italia not having a party representative at trail, or by not calling a witness other that Lynn Gee.  L-3's alternative Motion to Dismiss, likewise, is denied.  There are five factors the Court must consider when deciding whether to dismiss a case under Rule 41(b).  *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994)(citations omitted)("'(1)the degree of actual prejudice to the defendant; (2)the amount of interference with the judicial process; (3)the culpability of the litigant; (4)whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance, and (5)the efficacy of lesser sanctions'").  Having considered the relevant factors and the trial having proceeded through to a normal conclusion, the

Court concludes that the interest of justice would not be served by granting L-3's Motion(s).

4.   Telecom Italia's Motion to Strike Portions of L-3's Memorandum in Opposition to Plaintiff's Closing Brief **(Doc. #112)** is denied, as is its alternative request for leave to file a sur-reply.  L-3's reply relates to its counterclaim and, otherwise, is properly before the Court.  The Court will consider only those arguments it deems relevant to each party's claim under the rules of evidence and procedure.

**Telecom Italia's Breach of Contract Claim**

5.   Telecom Italia alleges in its complaint that L-3 breached the Service Agreement. To prevail on its breach of contract claim, Telecom Italia must establish by a preponderance of the evidence each of the following four elements: "(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Bair v. Axiom Design, L.L. C.*, 20 P.3d 388, 392 (Utah 2001).

6.   The Service Agreement is a valid binding contract, although its terms are ambiguous requiring extrinsic evidence to determine the intent of the parties.

7.   Telecom Italia failed to perform its obligations under the Service Agreement when it failed to make payments to CCC and to timely invoice L-3 for those payments.  "'It is an elementary principle of the law of contracts that in order to recover upon a contract, the contractor ... must first establish his own performance or a valid excuse for his failure to perform.'"  *Lowe v. Rosenlof*, 364 P.2d 418, 421 (Utah 1961)(citation omitted).

8.   Telecom Italia has no valid excuse for its failure to perform its obligations under the Service Agreement.

9.   The May 2, 2000 invoice form CCC to L-3 showing credit for payment from Telecom Italia for January-April 2000 @ $27,500.00 for a total of $110,000.00 does not satisfy Telecom Italia's contractual duty to timely invoice L-3 for payments made to CCC.

10.  Telecom Italia also has failed to meet its burden of proof that L-3 breached the Service Agreement.  L-3  was under no obligation to pay Telecom Italia until after it received a timely invoice from Telecom Italia, which it never received.

11.  Because Telecom Italia has failed to prove essential elements of its claim, L-3 is entitled to Judgement on Telecom

13

Italia's Breach of Contract Claim.

### Telecom Italia's Unjust Enrichment Claim

12.  Telecom Italia also alleges in its complaint that it is entitled to judgment against L-3 on a theory of unjust enrichment.  To prevail, Telecom Italia must establish by a preponderance of the evidence that "(1)the defendant received a benefit; (2)an appreciation or knowledge by the defendant of the benefit; (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying for it." *Davies v. Olson*, 746 P.2d 264, 268-269 (Utah App. 1987).

13.  Where, as here, the parties have or had an enforceable contract that governs their relationship, the equitable doctrine of unjust enrichment generally is not available.  *See, e.g. American* Towers *Owners Ass'n, Inc. v. CCI Mechanical, Inc*. 930 P.2d 1182 (Utah 1996).  There are circumstances, not present here, where unjust enrichment may be available notwithstanding the existence of a contract.  *See Richards Contracting Co. v. Fullmer Bros*., 417 P.2d 755 (Utah 1966).  "The statement is frequently found that where the parties have made an express contract the law will not imply one. ... It is more accurate ... to say that where the parties have made an express contract, the court should not find a different one by implication concerning

14

the same subject matter if the evidence does not justify an inference that they intended to make one."  3 Arthur Linton Corbin, *Corbin on Contracts* § 564, at 292-93 (1960).

14.  Under the facts presented, the remedy of unjust enrichment is not available to Telecom Italia.

15.  Even if Telecom Italia could properly assert a claim for unjust enrichment, it has failed to carry its burden of proof as to any of the three elements of that claim.

16.  L-3 is entitled to judgment as to Telecom Italia's claim for unjust enrichment.

**L-3's Counterclaim for Breach of Contract**

17.  In its Counterclaim, L-3 alleges that Telecom Italia breached the Service Agreement.  To prevail, L-3 must prove by a preponderance of the evidence the elements of breach of contract as set forth above.

18.  L-3 has failed to prove by a preponderance that it has been damaged in the amount of $39,600.00 as it claims.  The evidence is that L-3 was informed that Italian law required it to contract with an Italian company to provide telecommunications

landing services.  The amount claimed as damages by L-3 is the amount L-3 paid Telecom Italia for landing services for twelve months.  No evidence was presented that the requirement imposed by Italian law was suspended when Telecom Italia failed to make timely payments to CCC as required by the Service Agreement. In sum, there is no evidence that L-3 did not derive a benefit equal to the amount it claims as damages.

### SUMMARY

Defendants' Motion for Default Judgment (Doc. #98) is denied.  Plaintiff's Motion to Strike (Doc. #112) is denied.


Telecom Italia has failed to prove by a preponderance of evidence that it is entitled to judgment on its breach of contract claim.   Plaintiff is precluded from maintaining its unjust enrichment claim because it has a valid remedy at law. Even if Telecom Italia were entitled to maintain an equitable claim, it has failed to prove by a preponderance of evidence that it is entitled to judgment on its claim for unjust enrichment.


L-3 had failed to prove by a preponderance of the evidence that it is entitled to judgment on its counterclaim for breach of contract.

**ORDER**

**IT IS THEREFORE ORDERED,** consistent with these Findings of Fact and Conclusions of Law, that judgment be entered under Fed. R. Civ. P. 58 for Defendants on the Complaint and for Plaintiff on the Counterclaim.

DATED this 7th day of March, 2007.

BY THE COURT:

DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT

17